**THE HONORABLE ROBERT S. LASNIK**
**MARY ALICE THEILER, MAGISTRATE JUDGE**

09-CV-00842-LTR

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | | |
|---|---|---|
| **BRUCE DANIEL MULLIGAN,** | ) | **Case No. CO9-0842-RSL-MAT** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **DR. DAVID KENNEY, HEALTH CARE ADMINISTRATOR-MCC/TRU; MS KAREN PORTIN – ASSOCIATE SUPERINTENDENT-MCC/TRU; MR. SCOTT FRAKES, SUPERINTENDENT – MCC/TRU; MR. TIMOTHY PANEK, ARNP - HEALTH CARE PROVIDER, MCC/TRU; WASHINGTON STATE DEPARTMENT OF CORRECTIONS.** | ) | **CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. sub. sec. 1983** ~~**PROPOSED**~~ **AMENDED COMPLAINT UNDER RULE 15(a)(2) FEDERAL RULES OF CIVIL PROCEDURE** |
| **Defendants.** | ) | **NOTE FOR MOTION CALENDAR FRIDAY, DECEMBER 18, 2009** |

**I. PREVIOUS LAW SUITS:**

**A.** have you brought any other lawsuits in federal court in the United States while a prisoner? **NO**

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 2 of 15

**II. PLACE OF PRESENT CONFINEMENT:**

Monroe Correctional Complex, Twin Rivers Unit, P.O. Box 888, Monroe, WA 98272-0888

**A.** Is there a prisoner grievance procedure available at this institution? **YES**

**B.** Have you filed any grievances concerning the facts relating to this complaint? **YES**

**C.** Is the grievance process completed? **YES**

**III. PARTIES TO THIS COMPLAINT:**

**A. NAME OF PLAINTIFF:**

Bruce Daniel Mulligan – Inmate No. 711208
**Address:** Post Office Box 888 – Monroe WA 98272-0888

**B. DEFENDANT:**

Doctor David Kenney, Health Care Administrator, Monroe Correctional Complex, Twin Rivers Unit – Post Office Box 777 - Monroe, WA 98272. Defendant, Dr. David Kenney, is sued in his individual and official capacities.

**C. ADDITIONAL DEFENDANTS:**

Ms. Karen Portin, Associate Superintendent, Monroe Correctional Complex, Twin Rivers Unit – Post Office Box 888 – Monroe, WA 98272. Defendant, Ms Karen Portin, is sued in her individual and official capacities;

Mr. Scott Frakes, Superintendent, Monroe Correctional Complex, Twin Rivers Unit, Post Office Box 777, Monroe, WA 98272. Defendant, Mr. Scott Frakes, is sued in his individual and official capacities.

Mr. Timothy Panek, ARNP, Health Care Provider, Monroe Correctional Complex, Twin Rivers Unit – Post Office Box 888, Monroe, WA 98272. Defendant, Mr. Timothy Panek, is sued in his individual and official capacities.

State of Washington Department of Corrections, 7345 Linderson Way S.W., Post Office Box 41123, Tumwater, WA 98501.

**IV. LEGAL CLAIMS:**

Defendants, Dr. David Kenney, Ms Karen Portin, Mr. Scott Frakes, and Mr. Timothy Panek are sued in both their individual and official capacities, and at all times mentioned in this complaint each of these defendants acted under color of state law.

The Washington State Department of Corrections is sued in its official capacity as a State entity and at all times mentioned in this complaint was acting under color of state law.

**CLAIM I:**

DEFENDANTS HAVE CAUSED CRUEL AND UNUSUAL PUNISHMENT AND HAVE BEEN DELIBERATELY INDIFFERENT WHEN DEFENDANTS IGNORED DR. FAULDER COLBY'S DIAGNOSIS OF PARURESIS/SHY BLADDER, DR. SETH THALER'S AND DR. JAMES E. CONGDON'S DIAGNOSIS OF STAGE III RENAL FAILURE AND URINARY DISEASE, THEREBY INFLICTING PAIN AND SUFFERING BY REFUSING TO AUTHORIZE A HEALTH STATUS REPORT (HSR) FOR A SINGLE CELL TO PLAINTIFF FOR HIS DOCUMENTED PARURESIS - SHY BLADDER. U.S. Constitution Amendment 8; U.S. Constitution Amendment 14 where applicable.

**CLAIM II.**

DEFENDANTS VIOLATED FEDERAL LAW WHEN THEY DELIBERATELY IGNORED OR REFUSED TO MAKE A REASONABLE ACCOMMODATION OF A SINGLE CELL FOR PLAINTIFF'S DISABILITY OF AVOIDANT PARURESIS/SHY BLADDER AND CHOLECYSTECTOMIES. American's with Disabilities Act 28 U.S.C. § 12101 et. seq. and American's with Disabilities Act Accommodation Act of 2008, 28 U.S.C. § 12101 et.seq.

**FACTUAL ALLEGATIONS:**

1. Plaintiff is afflicted with a mental disorder known as avoidant paruresis/shy bladder which will not allow him to urinate in the presence or the threatened presence of others. According to Plaintiff's attending psychologist, Faulder Colby, PHD, the only available treatment for this mental disorder is

for Plaintiff to be assigned a single cell so that he may urinate at will.

2. Plaintiff is afflicted with a medical disorder caused from excessive surgeries known as cholecystectomies which causes him to defecate 8 to 12 times per day and to emit uncontrollable bursts of foul smelling bodily gases all day and all night.

3. On December 16, 1993, at the Clallam Bay Corrections Center (herein CBCC) Plaintiff was diagnosed by Department of Corrections (herein DOC) consulting psychiatrist, David A. Johnston, M.D. with avoidant paruresis/shy bladder. Dr. Johnston issued Health Status Reports (herein HSR's) for Plaintiff From December 1993 until Plaintiff was transferred in 2003, authorizing him to be treated with the shy bladder protocol for drug screen testing; which allowed Plaintiff extra time to urinate and if he was unable to void, to be excused from testing.

4. On April 2nd, 2008, in a primary encounter report Plaintiff's primary medical provider, Ms Y. Brukhis, PA-C, and the Medical Director for the Monroe Correctional Complex, Dr. Stewart Andrews, examined Plaintiff and concluded that he had cholesyctectomies.

5. In 2003 Plaintiff was transferred to the Washington State Reformatory (herein WSR) in Monroe for medical reasons. Plaintiff was again housed in a single cell.

6. Following Dr. Johnston's, diagnosis and HSR's, Plaintiff's medical provider at WSR continued issuing HSR's for blood draws instead of urine samples for drug screen testing.

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 5 of 15

7. According to the Department of Correction's own Policy number 420.380 (revised 12/05/2007 Attachment 2) the collection of oral fluids (spit/saliva) is permitted instead of urine samples for drug screen testing when "documented medical issues that may preclude urination," exist.

8. In early April, 2008, Plaintiff was informed that he would be transferred to a minimum security unit at Twin Rivers Unit. (herein TRU)

9. On April 10, 2008, Plaintiff sent a letter to the former Superintendent of the Monroe Correctional Complex, (herein MCC) Kennth Quinn, explaining his problems with paruresis/shy bladder and asked for a single cell to be assigned to him when he arrived at the TRU. To date, Superintendent Quinn has not responded to plaintiff's request for a single cell.

10. On April 14, 2008, Plaintiff was transferred to a minimum unit at TRU, a part of MCC, in Monroe, WA, and placed in a two-man cell. Due to his avoidant paruresis/shy bladder, Plaintiff was/is unable to urinate with a cell-mate present, and is forced to hold his urine all night which is excruciatingly painful and very well could be damaging to his urinary and bladder health.

11. On May 2, 2008, Plaintiff had his first appointment with Timothy Panek, ARNP, Plaintiff's first line medical provider at his new institution, Twin Rivers Unit. At that initial appointment Plaintiff explained his problems to Mr. Panek concerning his paruresis and cholecstectomies and requested to be assigned a single cell because of his disability. Mr.

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 6 of 15

Panek told Plaintiff that "Twin Rivers does not assign single cells to people who have this type of a problem nor do they give out HSR's to avoid random urine testing, and that if Plaintiff did not agree with that decision, that he should take his complaints to whatever level he though appropriate." Plaintiff has requested a single cell assignment from Mr. Panek nearly every time he has seen him and that is more than 20 times.

12. On August 29, 2008, Plaintiff met with Faulder Colby, PHD, his mental health provider, and Dr. Stewart Andrews, Medical Director for MCC. At that meeting Plaintiff again requested the authorization for a single cell due to his paruresis/shy bladder and was told by Dr. Andrews and Dr. Colby that, "Dr. Andrews and I held [hold] firm in our opinion that he [Mulligan] should not receive and HSR at our level of intervention, knowing the high likelihood it would be denied at a higher level."

13. The next highest level would have been Defendant, Dr. David Kenney, Health Care Administrator, purportedly, Dr. Andrews' supervisor. According to Dr. Andrews, Defendant Kenney has the authority to authorize a single cell. Dr. Kenney also has full access and knowledge of Plaintiff's medical/mental situation and its consequences.

14. On September 13, 2008, Plaintiff wrote to Defendant, Ms Karen Portin, Associate Superintendent for TRU asking for a single cell because of his paruresis/shy bladder.

15. On September 21, 2008, Plaintiff wrote to the new Superintendent, Mr. Scott Frakes, concerning his paruresis/shy bladder, and asked for a single cell based on the same criteria

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 7 of 15

of HSR's, and Dr. Colby's recommendation for a single cell. There has been no response from the Superintendent.

16. Defendant Portin stated in her October 1, 2008 response to Plaintiff's request for a single cell that a "Single cell approval on Health Status Reports must be reserved for severe medical and mental health cases only."

17. On February 11, 2009, Doctor James E. Congdon, D. O., another of Plaintiff's DOC contract doctors, noted in his office report, after Plaintiff's scheduled visit, that Plaintiff has Level III chronic renal dysfunction: "most likely the anemia of chronic renal dysfunction."

18. On February 24, 2009, Richard Linn, contract attorney for MCC, on behalf of Plaintiff, wrote a letter to Superintendent Scott Frakes informing Mr. Frakes again of Plaintiff's paruresis/shy bladder and the medical doctor's reports concerning Plaintiff's stage III kidney disease. Mr. Linn requested a single cell for Plaintiff because of his paruresis/shy bladder problem based on the combination of paruresis and chronic renal failure as reported by Dr. Seth Thaler and Faulder Colby, PHD.

19. On March 10, 2009, Defendant Karen Portin, Associate Superintendent, in response to Mr. Linn's letter of February 24, 2009, to Superintendent Frakes, answered for the Superintendent concerning the request for a single cell for Plaintiff.

20. In that response Ms Portin stated: "After reviewing your request, I am going to forward your letter to Dr. Colby, Psychologist 4, who is qualified to provide a clinical response."

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 8 of 15

21. On March 28, 2009, Plaintiff wrote to Defendant, Doctor David Kenney asking him to approve a single cell because of his paruresis/shy bladder. Plaintiff also explained his problem with stage III kidney disease. Defendant Kenney wrote on the letter from Plaintiff: "Discuss with your provider" and signed it before sending the letter back to Plaintiff.

22. Plaintiff had already discussed this problem with his provider, Tim Panek, and was told by him to contact Dr. Kenney which Plaintiff did by the letter of March 28, 2009. Wishing to follow protocol, at his next appointment with Tim Panek, Plaintiff again discussed his problem and asked to be given an HSR for a single cell. This request was again refused. Tim Panek told Plaintiff that if he was unhappy with that decision he should take his complaint as far as he thought necessary to get what he thought he needed.

23. On April 15, 2009, in a second letter Ms Portin responded to Mr. Richard Linn, contract attorney, in the matter of Plaintiff's paruresis/shy bladder problem. In relevant part, Ms Portin stated: "Whether or not Mr. Mulligan has, or does not have, a "shy bladder" for psychological reasons is not relevant to the medical opinion that he does not require a single cell." In the next paragraph she states: "Since he [Mulligan] is happy with his current cell partner, and since there is an unequivocal medical opinion that he does not require a single cell, hopefully this matter is now satisfactorily addressed."

24. Mr. Frakes and Ms Portin, being fully informed of Plaintiff's situation and medical/mental health problems ignored

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 9 of 15

the matter yet again and sent Mr. Linn's letter to Dr. Colby, who is the person in the first place that has recommended a single cell for Plaintiff because of his paruresis/shy bladder.

25. Plaintiff has repeatedly informed MCC Health Care Administrator, Defendant, Dr. David Kenney, Defendant, Karen Portin, Associate Superintendent, as well as the MCC Superintendent, Mr. Scott Frakes, Mr. Timothy Panek, ARNP, and others of the pain and suffering he suffers nightly because he can not urinate and the damage that could occur because of his stage III kidney disease if not placed in a single cell. None of these department heads or treating practitioners have authorized the recommended treatment for Plaintiff, a single cell, nor will any of them authorize a single cell for Plaintiffs problems with constant defecation and uncontrollable flatulation.

26. After repeated visits - on March 25, July 15, and again on October 28, 2008, and several others, DOC consulting Medical Doctor, Seth Thaler, re-examined Plaintiff and re-diagnosed Plaintiff with chronic renal failure related to stage III kidney disease. Stating: "Bruce Mulligan is seen in the state prison for follow up of chronic renal failure."

27. On July 11, 2008, Dr. Faulder Colby, PHD, pursuant to Plaintiff's paruresis/shy bladder, issued an HSR authorizing blood draws instead of urine samples for drug screen testing.

28. On July 17, 2008, Health Care Administrator, Defendant, Dr. David Kenney, along with Mr. Mike Walls, ordered that HSR rescinded. No explanation was given.

29. On October 28, 2008, after one of Plaintiff's

appointments with Dr. Thaler, that physician indicated in his office report that: "it is not beneficial for [Plaintiff's] renal function to hold his urine all night long." Plaintiff cannot urinate at all when there is another person/inmate in the cell with him or in close proximity.

30. On November 13, 2008, after 6 months of consultations, Plaintiff's primary mental health treatment provider, Faulder Colby, PHD, issued a report confirming the diagnosis from 1993 that Plaintiff has paruresis/shy bladder.

31. Dr. Colby stated in his report: "... permitting this patient to have a single cell, a man who has been granted same or similar dispensations in other DOC settings, is a pretty small matter. For the patients sake, it is a good idea, and I recommend it."

32. On September 9, 2008, Plaintiff filed a grievance requesting a single cell because of his paruresis/shy bladder and cholecystectomies which was denied at levels one and two.

33. On January, 8, 2009, Plaintiff filed an appeal to the third and highest level of the grievance process. On February 6, 2009, this level III grievance appeal was answered and denied. **See** (Copy of Level III grievance attached to original complaint) Grievance number **08-21320**)

34. In the denial of the Level III grievance, DOC chief of psychiatry, Bruce Gage, MD, ignored Dr. Colby's hands-on clinical evaluation by acknowledging only that "the paruresis causes discomfort." Dr. Gage did indicate that if there are other related conditions that might bear consideration, they

should be brought to the attention of DOC. This has been done with the reports from Doctors Thaler and Congdon, but no action has been taken by Dr. Gage or anyone in authority at the prison.

35. On January 16, 2009, G. Steven Hammond, DOC's chief medical officer, in response to a letter written to him by Plaintiff told Plaintiff that institutional health staff are in the best position to order treatment, based on their evaluations, laying the situation back onto Defendant, Dr. David Kenney, again, who did nothing.

36. On February 17, 2009, DOC informed Plaintiff that he had exhausted all administrative remedies on his grievance request for a single cell based on medical necessity.

37. All Defendants in this suit, as indicated above, knew of the medical and mental health diagnosis of Plaintiff. Defendants knew of Plaintiff's HSR's for paruresis and of Plaintiff's renal failure and have been deliberately indifferent to Dr. Faulder Colby's, Dr. Thaler's, and Dr. Congdon's reports and recommendations in denying Plaintiff's request for treatment by not placing him in a single cell. This is much more serious than a mere matter of differing opinions.

38. Plaintiff asserts that primarily as a result of the aforementioned reports from Dr. Colby, Dr. Thaler, and Dr. Congdon, as well as the letter sent to Superintendent Frakes from Attorney Richard Linn, Superintendent Frakes authorized a single cell for Plaintiff on March 19,2009, but for some reason it was rescinded before Plaintiff could move into it.

39. As a result, Plaintiff's health is deteriorating and

he suffers daily/nightly pain. The renal failure is exacerbated and the necessities of life, such as urinating, are being denied Plaintiff.

40. Plaintiff is being deprived of adequate nightly sleep because of the constant pain Plaintiff must endure each night because he must hold his urine all night because he cannot urinate with a cell-mate.

41. On April 10, 2008, before Plaintiff was transferred to the Twin Rivers Unit, he wrote a letter to Mr. Kenneth Quinn, Superintendent of the Monroe Correctional Complex, of which Twin Rivers Unit is a part. In this letter Plaintiff requested to be accommodated under the American's with Disabilities Act (herein ADA) and to be placed in a single-man cell upon his arrival at Twin Rivers Unit because Plaintiff is/was unable to urinate with anyone else present. This being the results of Plaintiffs documented avoidant paruresis/shy bladder.

42. On July 27, 2008, after being placed in a two-man cell, Plaintiff wrote to Ms Holly Delcambre the ADA compliance manager for MCC.

43. On August 12, 2008, Plaintiff wrote to Ms Annie Williams, the newly appointed ADA compliance manager, asking both of these compliance managers for accommodation under the ADA for a single cell because of avoidant paruresis/shy bladder.

44. After no meaningful response or action from either of these compliance managers, on September 13, 2008, Plaintiff wrote to defendant, Ms Karen Portin, asking for emergency accommodation for a single cell under the ADA because of his

avoidant paruresis/shy bladder.

45. On September 9, 2008, because of Dr. Johnston's ten years of HSR's, the HSR's issued to Plaintiff from his provider At WSR, as well as the recommendation of Dr. Colby that Plaintiff be assigned a single cell; Plaintiff filed a grievance to be accommodated under the ADA for a single cell because of his paruresis/shy bladder and cholecystectomies which was denied.

46. On February 6, 2009, Plaintiff's appeal to the third and highest level was denied. See attached Level III grievance denial number **08-21320.**

47. On November 13, 2008, after extensive consultation with Dr. Faulder Colby, PHD, a report was generated by Dr. Colby concurring with Dr. Johnston's assessment of Plaintiff's avoidant paruresis/shy bladder and a single cell assignment was recommended by Dr. Colby.

48. Dr. Colby recommended that Plaintiff see Dr. Steve Jewitt, M.D., a staff psychiatrist, to be evaluated for a possible intervention of drugs to attempt to treat his paruresis/shy bladder. Dr. Jewitt prescribed medication and that medication was ultimately not successful in aiding Plaintiff to be able to urinate with others present. Dr. Jewitt removed Plaintiff from the medication because it had no visible effect.

49. Plaintiff has exhausted all available avenues concerning ADA accommodations.

50. Plaintiff includes all pertinent facts and exhibits by reference to and from Claims I and II because they are so closely related.

Case 2:09-cv-00842-RSL-MAT Document 44-2 Filed 02/19/10 Page 14 of 15

**V. PRAYER FOR RELIEF:**

Plaintiff respectfully prays that this Honorable Court enter a judgment granting Plaintiff:

1. An order for immediate preliminary and permanent injunctive relief in the form of a single cell, with a toilet in the cell, at the Twin Rivers Unit and all other Department of Corrections facilities Plaintiff may be housed in in the future, with the instruction that no other inmates be allowed to sleep, for any reason, anywhere in the cell, including on the floor;

2. An order precluding DOC from collecting urine samples from Plaintiff for drug testing because of his inability to urinate with others present and due to his 15 years of HSR's for shy bladder protocol;

3. An order that if samples for drug testing or any other type of substance testing are to be collected, by DOC either in full confinement or in partial confinement such as community placement or community custody or any other form of confinement that those samples be in the form of blood draws, hair samples, or saliva/spit samples as authorized by DOC policy number 420.380 Attachment 2 and all other pertinent DOC policies if applicable at the time;

4. Nominal damages to be determined later;

5. Compensatory damages in an amount to be determined later against each defendant;

6. Punitive damages in the amount of $650,000.00 against each defendant;

Case 2:09-cv-00842-RSL-MAT Document 34-2 Filed 12/01/2009 Page 15 of 15

7. That this court enjoin Defendants from further prohibited discrimination or retaliation of any kind against Plaintiff;

8. A jury trial on all issues triable by jury;

9. Plaintiff's costs in this suit;

10. Any other relief this Honorable Court deems just, proper, and equitable.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 29 day of November, 2009.

Bruce Daniel Mulligan
Plaintiff, pro se